### HILLSIDE CHEMICAL CO. v. MUNSON & CO.

(Circuit Court, D. Connecticut. July 5, 1906.)

No. 1,062.

TRADE-MARKS—SUIT FOR CONTRIBUTORY INFRINGEMENT—WAIVER OF CLAIM
AGAINST PRINCIPAL INFRINGER.

Complainant brought a suit for infringement of a trade-mark, which was settled by stipulation, and a decree entered establishing complainant's exclusive right to the trade-mark from that date; but it was stipulated that neither the defendant therein nor its customers should be held liable for past infringements. *Held* that, having thus waived all claim against the principal infringer, a court of equity would not thereafter entertain a suit by complainant for contributory infringement against one who had made and furnished to such infringer the cartons used by it containing the infringing trade-mark.

In Equity. Suit for infringement of trade-mark.

Henry M. Earle, for complainant.

John K. Beach, for defendant.

PLATT, District Judge. The essential facts in this case can be briefly stated. Plaintiff makes and sells a medical preparation known as "Terraline," distinguished by name, label, and manner of putting up. Defendant is charged in the bill with selling counterfeit packages or cartons containing the trade-mark and other devices and designs of the plaintiff to others, thereby enabling them to palm off upon the public a similar preparation, in fraud of plaintiff's rights and in deception of the public. The defendant makes paper boxes, and if it has done any wrong at all, it has done it by selling the cartons to others, and thus enabling them to infringe. This is what it did: In January, 1889, R. K. Helphenstine and James E. McKahan entered into business at Washington, D. C., under the name of the Terraline Company, and on their letter-heads Helphenstine appears as president and McKahan as secretary. Defendant's predecessor furnished boxes or cartons for the Terraline to that company, and after 1891, while connected with the National Folding Box & Paper Company, continued the sales. In January, 1898, an order was sent to the defendant corporation from that company for 100,000 boxes. These were made, and 25,000 of them were delivered to the Terraline Company, the balance remaining in the hands of the defendant. The Terraline Company about that time became financially embarrassed, and made no payments on the order. May 5, 1898, said Helphenstine assigned his one-half interest in the Terraline Company and in the registered trade-mark, "Terraline," to his partner, James E. McKahan, which assignment was duly recorded in the Patent Office May 9, 1898. The business was then reorganized under the name of the Hillside Chemical Company, a West Virginia corporation, with its principal place of business at Newburgh, N. Y. (the complainant), which acquired whatever rights McKahan had under the assignment. Helphenstine organized the Glyza Chemical Company, which was continued at the old Washington stand of the defunct Terraline Company. In July, 1898, the complainant wrote to the

defendant about cartons. Defendant furnished new ones, and also disposed of a large part of the stock on hand of the Terraline Company cartons. In October, 1898, and in the spring of 1899, defendant sold the balance of the old stock of Terraline cartons to said Glyza Chemical Company and has never sold any to any other parties. Complainant brought suit in the Supreme Court of the District of Columbia against said Glyza Chemical Company for infringement of its trade rights in Terraline. A restraining order was obtained against the Glyza Company, but was later discharged, and an application for preliminary injunction was twice denied, and the litigation at last terminated in a so-called "stipulation and decree," filed March 21, 1901, which sets forth, inter alia, "that the said cause shall not be further proceeded with" unless defendants should do something wrong thereafter, and "that no claim of any kind shall be made against the customers of the defendants, or any of them, because of the purchase from them, or any of them, of any Terraline prior to the date of this stipulation," and that a decree shall be entered adjudging that "from and after this date" the complainant, the said Hillside Chemical Company is entitled to the exclusive use of the trade-mark "Terraline," which decree was on that day accordingly entered. A sample exhibit of the boxes complained of carries on its front these words, "Prepared only by the Terraline Company, Washington, D. C." The balance of the old stock sold to complainant by defendant had the same inscription on its front, but carried on its back the statement that it was put out by complainants as successors to the Terraline Company.

The proofs satisfy me that the defendant was careless, and perhaps indifferent, in its dealings with the complainant and the Glyza Company in 1898 and 1899. If the litigation with the Glyza Company had resulted in a complete victory for the complainant, it would hardly do for defendant to say, "You people were fighting about your respective rights. I could stand neutral, and furnish you both with ammunition to carry on the business end of your warfare." It was defendant's duty to examine into the matter more closely.

The stipulation and decree in the Washington suit, however, puts a different face upon the matter. Defendant has sold the alleged infringing cartons to no party except the Glyza Company. Its wrong, then, consists in having furnished in 1898 and 1899 the sinews of war to the great infringer. On March 21, 1901, the present complainant forgave the principal wrongdoer all its sins up to date, and promised not to follow up those whom it had made co-sinners by placing in their hands the offending bottles and boxes. It would be highly inequitable now to pursue one who had helped the principal sinner in its wrongdoing. Technically, and following the very letter of the stipulation and decree, it is possible to argue that this is not a case in which one of two joint feasors has been released, but when we study the matter in the spirit which always animates a court of equity we find that the result arrived at is the same.

This situation is so strongly marked that it seems superfluous to discuss whether or not the complainant's hands are clean.

Let the bill be dismissed, with costs.